HARRIS, Judge.
Appellant was convicted of grand larceny and sentenced to eight years in the penitentiary. Throughout the trial proceedings he was represented by retained counsel. He pleaded not guilty at arraignment. After conviction he gave notice of appeal and his sentence was suspended pending appeal. New counsel was employed to represent him on appeal.
Omitting the formal parts the indictment reads as follows:
“INDICTMENT
“THE STATE OF ALABAMA,
NO. 83 CIRCUIT COURT, SPRING TERM, 1975
CLARKE COUNTY
“The Grand Jury of said County charge that before the finding of this indictment Wayne Moore, whose name is otherwise unknown to the Grand Jury, feloniously took and carried away money, lawful currency and coins of the United States of America, the exact denominations of which are unknown to the Grand Jury, and checks, of the value of, to-wit, $22,-766.68, the personal property of Dianne K. Johnson, Mack Kelly and Mack Kelly Corporation, against the peace and dignity of the State of Alabama.
/s/ HARDIE B. KIMBROUGH District Attorney First Judicial Circuit
“A TRUE BILL
/s/ HAROLD E. DIXON, Foreman of the Grand Jury
“Presented in Open Court to the Presiding Judge by the Foreman of the Grand Jury in the presence of 17 other Grand Jurors, this 27 day of February, 1975.
/s/ S. A. ARMISTEAD. Clerk
“Filed in Open Court this 27 day of February, 1975.
/s/ S. A. ARMISTEAD. Clerk
“Bail is fixed at $5,000.00 /s/ WM. G. LINDSEY. Presiding Judge
NO. 83 Page _
Case # 4580-A
THE STATE OF ALABAMA, CLARKE COUNTY CIRCUIT COURT, SPRING TERM, 1975
THE STATE '■ VS WAYNE MOORE INDICTMENT FOR GRAND LARCENY STATE WITNESSES:
Mack Kelly
Ray Sheffield
Hubert Jackson
Helen Roberts
H. B. Bradford”
The evidence for the State tended to show that Mack Kelly was in the trucking business and had his office in Grove Hill, Clarke County, Alabama. That on the night of February 19, 1975, Kelly closed his business for the night and locked all doors to the building. He had a combination safe in his office in which he had $7,000.00 in cash, over $15,000.00 in checks and a box containing silver dollars. He went to his office around 7 o’clock the next morning and found that his safe had been broken into and that the money and checks were missing. He also found the back door was open. He stated that all the money and checks except a number of two-dollar bills and the silver dollars belonged to the corporation of which he was President. The two-dollar bills and the silver dollars belonged to his daughter, Dian Johnson. Photographs were made of the broken safe and admitted into evidence without objections. Upon discovering the burglary Kelly imme *388 diately called the Sheriff, who, along with other officers, immediately began conducting an investigation.
Kelly identified State’s Exhibit 3 as a check in the amount of $136.92 drawn on the Commercial National Bank of Demopo-lis, Alabama, by Coleman Lumber Inc., and payable to E. W. Kelly Corp., which he put in his safe when he locked the safe on the night of February 19, 1975. The check was not correctly made payable to the payee but Mr. Kelly testified that he endorsed it just like it was made out, viz., “E. W. Kelly Corp.”. This check was endorsed by Eddie W. Moore, the appellant herein. Mr. Kelly stated Eddie W. Moore’s endorsement was not on the check when he put it in his safe. Defense counsel stipulated that it was appellant’s signature on this check. Kelly further testified that he next saw this check at the Sheriff’s Office a week later when the Sheriff turned over to him $15,-272.00 in checks and the box containing 234 silver dollars.
On cross-examination Kelly testified that there was a gambling game at his place of business on most Monday and Saturday nights and that appellant had gambled there on several occasions.
Mrs. Charles Wilson worked for Mack Kelly in his office and handled business transactions dealing with checks. She testified that she was working on February 19, 1975, when her husband, Charles Lewis Wilson, brought his payroll check to her and she asked Mr. Kelly if he would cash this check and he said yes.' Mrs. Wilson endorsed the check in the name of “Charles Lewis Wilson” and also endorsed her name “Rebecca Wilson” and gave the check to her mother to cash. Her mother also worked in Mr. Kelly’s office and after cashing this check, it was put in the cash box in the safe. There were no other endorsements on this check when it was put in the safe.
Mrs. Helen Roberts testified that on February 26, 1975, she was employed at Junior Food Mart in Grove Hill and that the appellant brought her a check and asked her to cash it for him. She stated she asked appellant where he got the check and he told her he had done some work for Charles Lewis’ wife and that’s the way she paid him. She identified State’s Exhibit 4 and stated that the endorsements bore the names of “Charles Lewis Wilson” and “Rebecca Wilson” and that appellant endorsed his name “Wayne Moore” on the check in her presence and she then cashed it. She stated that Mack Kelly’s name did not appear on the check. She further testified that on the same day she cashed the check Officer Hubert Jackson came to the store and picked up this check. Defense counsel stipulated that appellant’s name was endorsed on State’s Exhibit 4.
H. B. Bradford testified that on February 26, 1975, he saw Wayne Moore lose money gambling with Mack Kelly at Kelly’s office. He cashed a check for Moore and identified it as State’s Exhibit 3.
Eddie Slayton, Deputy Sheriff, went to Mack Kelly’s place on February 26, 1975, and arrested appellant and took him to jail. Moore’s pickup truck was at Kelly’s place when he was arrested and the officer also took appellant’s truck to the jail. While the truck was at the jail, the officer looked behind the seat of the pickup truck and found a wooden box containing silver dollars and a number of checks under the box. The Deputy did not touch the box or the checks but called the Sheriff who took custody of the box and the checks.
The Sheriff delivered the checks to Mr. Kelly and kept the box of silver dollars until the date of trial.
Ray Sheffield, Sheriff of Clarke County, testified that he was also at Mack Kelly’s on February 26, 1975, to arrest appellant. The Sheriff took possession of the box containing the silver dollars that Deputy Slay-ton had found and stated that it contained $15,000.00 worth of checks payable to Mack Kelly. He gave the checks to Mr. Kelly and kept the box of silver dollars for evidence. This box was introduced in evidence without objections.
The appellant testified that he and his brother had seen Mack Kelly at a coffee shop around 2 o’clock on the morning of the *389 alleged crime and he asked Kelly if he wanted to shoot dice. All three went to Kelly’s office and while appellant and Kelly began shooting dice, appellant’s brother went to the car and went to sleep. Appellant claimed he began winning heavily and Kelly said he didn’t have any more cash but that he had some checks. That they began shooting for higher stakes and appellant continued to win heavily until Kelly lost all the checks and silver dollars. Appellant claimed that Kelly asked him to hold the checks until he could get up the money. He said he asked Kelly several times for the money but Kelly put him off. Appellant admitted cashing two checks.
James Moore, appellant’s brother, stated that he and Wayne Moore went to Kelly’s office and he watched them start shooting dice on the morning of the alleged theft, but he got sleepy and went to the car. He said just before daylight appellant came out to the car and showed him some checks and silver dollars he had won.
Mr. Kelly testified in rebuttal that he did not shoot dice with appellant on the night of February 19, 1975, and that he did not know appellant had gotten his checks and silver dollars out of his safe until he saw all of these at the Sheriff’s Office the night appellant was arrested.
There was no motion to exclude the State’s evidence; there was no motion to suppress the evidence found in appellant’s truck after his arrest;' there was no objection to the testimony relating to the $15,-000.00 in checks and the silver dollars found in the box in appellant’s truck; there was no request for the affirmative charge; there were no exceptions reserved to the oral charge of the Court, and no adverse rulings by the trial court which contained any merit. Appellant did file a motion for a new trial but no evidence was taken on this motion. In this state of the record nothing is presented to this Court for review. Mosley v. State, 54 Ala.App. 59, 304 So.2d 613; Stokes v. State, 54 Ala.App. 112, 305 So.2d 387; Hurst v. State, 54 Ala.App. 254, 307 So.2d 62; Bass v. State, 55 Ala. App. 88, 313 So.2d 208; Jones v. State, 55 Ala.App. 466, 316 So.2d 713.
Review by this Court is limited to those matters on which a ruling or action of the trial court was invoked at nisi prius. Canady v. State, 55 Ala.App. 473, 316 So.2d 720.
In reviewing the refusal of a motion for a new trial this Court will indulge every presumption in favor of the correctness thereof. Moore v. State, 52 Ala.App. 179, 290 So.2d 246; Johnson v. State, 51 Ala.App. 172, 283 So.2d 624; Clark v. State, 54 Ala.App. 217, 307 So.2d 28.
We have carefully examined the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.